UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VLADIMIR FRANKFURT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEGA ENTERTAINMENT GROUP II, et al.,<br><br>　　　　Defendants. | No. 15 CV 667<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vladimir Frankfurt's first amended complaint alleged that three individuals and two business entities breached a verbal contract and violated both the federal Securities Act of 1933 and the Illinois Securities Law of 1953. [12].[1] After Frankfurt voluntarily dismissed the individuals from the suit, the entities moved to dismiss. [45]. The first amended complaint was dismissed for failure to state a claim, *see* [52], and Frankfurt filed a second amended complaint, [59]. Frankfurt brings claims against Gary Fishkin, Alexander Field, and Edward Renko for violations of both federal and Illinois securities law. He separately brings a breach of contract claim against Fishkin and defendant entities Mega Entertainment Group II and Pavilion Restaurant & Petergof Banquet Hall. Defendants Mega and Pavilion again move to dismiss. For the following reasons, defendants' motion is denied.

---

[1] Bracketed numbers refer to entries on the district court docket.

## I. Legal Standards

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a 12(b)(1) motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When a party makes a facial challenge to jurisdiction under this rule, the court need only "look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.*

A complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *see Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). But under this plausibility standard, a court cannot disregard factual allegations simply because they seem unlikely. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). "The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may exclude documents attached to a motion to dismiss, unless "they are referred to in

the plaintiff's complaint and are *central* to his claim." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)).

**II. Background**

In August 2005, defendant Gary Fishkin, representing all defendants, approached plaintiff Vladimir Frankfurt and discussed with him Capital Development Group, LLC, whose members included Fishkin, defendant Edward Renko, and defendant Alexander Field. [59] ¶¶ 4–6, 11–12. Fishkin told Frankfurt that Capital was involved in the construction business and in good financial condition. *Id.* ¶ 12. Based on that information, Frankfurt purchased from Fishkin a promissory note in the amount of $100,000, payable in August 2006 with a 12% annual interest rate. *Id.* ¶¶ 11–12. The promissory note identified Capital as the borrower and was signed by Fishkin in his role as Vice President. *Id.* ¶ 13. On several occasions, Frankfurt told Fishkin that he did not plan to extend the note beyond August 2006. *Id.* ¶ 14.

But in August and September of 2006, over the course of several meetings, Fishkin asked Frankfurt to buy a promissory note from EAG Capital Holdings, Inc., also owned by Fishkin, Renko, and Field, which he explained was the umbrella corporation that owned Capital Development Group and other entities. *Id.* ¶¶ 4–6, 15. Fishkin told Frankfurt that all of the companies in their portfolio were in good financial condition, and that Frankfurt's investment would be safe. *Id.* Based on that information, Frankfurt bought a new promissory note from EAG to replace the

3

maturing note that had been issued by Capital. *Id.* ¶ 17. That note identified EAG as the borrower and was signed by Renko as its CEO. *Id.* ¶ 18.

In August 2007, Fishkin met with Frankfurt in EAG's office and told him again that the companies were in good financial condition. *Id.* ¶ 19. He asked Frankfurt to renew his note, and Frankfurt renewed it for an additional year. *Id.* ¶¶ 19–20. The 2007 note again identified EAG as the borrower, but this time was signed by Field as its President. *Id.* ¶ 21.

At a meeting in EAG's office in August 2008, Fishkin told Frankfurt that they had received additional capital from Russian investors and were diversifying their businesses, remaining in good financial condition despite the economic downturn. *Id.* ¶ 22. Again, Frankfurt agreed to a new, yearlong promissory note, but this time with an acceleration clause that provided for repayment at any time upon 30 days written notice. *Id.* ¶ 23. This note again identified EAG as the borrower and was signed by Field as its President. *Id.* ¶ 26.

The promissory notes did not specify how the money was being spent—only that it would be used "for the purpose of developing Various Projects." *Id.* ¶ 27. But in September 2008, Frankfurt attended an investor presentation at Pavilion Restaurant & Petergof Banquet Hall in Northbrook, Illinois, a new restaurant and event space that EAG and Capital had been developing over the preceding year. *Id.* ¶¶ 28, 31. The defendant individuals had formed a new entity, Mega Entertainment Group II, LLC, to manage both this venture and a second Pavilion Restaurant, which opened later. *Id.* ¶¶ 32–35. Frankfurt alleges that Mega shared its business

4

address with EAG and Capital, and that the three entities, all owned by Fishkin, comingled their assets. *Id.* ¶¶ 34–36.[2]

At the end of 2008, Frankfurt asked for repayment of the note in full pursuant to the acceleration clause. *Id.* ¶ 37. Around January 5, 2009, Fishkin, Field, and Renko told him they could not comply with that request, but would be able to repay the note upon its maturity in August. *Id.* ¶ 38. But later that month, EAG, Capital, and Mega were evicted from their office, and EAG and Capital dissolved. *Id.* ¶ 39.[3] As Frankfurt would later learn, the defendant individuals' businesses had been struggling for capital and were on the verge of bankruptcy for the preceding two years. *Id.* ¶ 57–58. And they had defaulted on a $26,210,000 loan in October 2008. *Id.* ¶ 58.

At the end of January 2009, Frankfurt sent Fishkin a demand for rescission of his note, and then threatened to sue when Fishkin did not comply. *Id.* ¶¶ 42–43, 45. Fishkin told Frankfurt that he needed until early 2010, because defendants were working hard to increase business at the Pavilion restaurants and to pay off other loans related to the Northbrook development. *Id.* ¶ 46. In March 2010, Fishkin met with Frankfurt in the Northbrook restaurant and promised that defendants would pay him in installments of $1,000 per month through the end of 2011, followed by the remainder of the loan in a lump sum. *Id.* ¶ 47. In exchange,

---

[2] Mega has been co-owned by nonparty Marina Zarovsky since 2007, and fully owned by her since 2014. [59] ¶ 7.

[3] Frankfurt also alleges that in the beginning of 2009, the Illinois Securities Department told him the promissory notes were issued in violation of Illinois securities law, but that the Illinois Attorney General's Office found no such violation. [59] ¶¶ 41, 44.

5

Frankfurt agreed not to file suit. *Id.* ¶ 48. For several months, defendants held up their end of the bargain. Frankfurt received a total of $10,000 from April 2010 through January 2011, but the February 2011 check was rejected for lack of funds. *Id.* ¶¶ 49–51. Over the course of several meetings in March and April 2011, Fishkin explained that the payments had stopped because Frankfurt had cooperated with an investigation of defendants conducted by the Illinois Securities Department. *Id.* ¶¶ 52–53. Frankfurt has yet to receive the rest of his money. Id. ¶ 54.

In June 2011, Fishkin, Renko, and Field were arrested on charges unrelated to the promissory notes. *Id.* ¶ 55. And in August 2014, Frankfurt learned from Renko's plea agreement that the individual defendants' businesses' financial condition was poor between 2006 and 2008. *Id.* ¶¶ 56–59. He claims defendants' actions amounted to "Fraudulent Practices Violation of Federal Security Act of 1933" (Count I), "Fraudulent Practices Violation of Illinois Security Law of 1953" (Count II), and "Breach of Contract" (Count III). *See* [59].

While the second amended complaint does not differ substantially from the first, [12], it does contain a few additional clarifying details, including the terms of the contract at issue in Count III. And where the first amended complaint alleged all of its claims against all of the defendants, the second amended complaint now specifies that Counts I and II are directed at only Fishkin, Field, and Renko, while Count III is directed at Fishkin, Mega, and Pavilion.

## III. Analysis

### A. Subject Matter Jurisdiction

The moving defendants, Mega and Pavilion, first state that there is no subject matter jurisdiction for this suit. But their argument is that the breach of contract claim, which is the only claim against the moving defendants, does not meet the plausibility standard for pleadings described in *Iqbal* and in *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). A challenge to the plausibility of a complaint's allegations does not contest the court's subject matter jurisdiction, but whether the complaint states a claim upon which relief may be granted.

The real question pertaining to subject matter jurisdiction, as moving defendants note in other parts of their briefs, is whether the complaint properly pleads a federal claim such that supplemental jurisdiction can be exercised over the breach of contract claim against them. Count I falls under federal jurisdiction pursuant to 28 U.S.C. § 1331 because it alleges a violation of federal law. Under 28 U.S.C. § 1367(a), "courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Two claims form part of the same case or controversy if they "derive from a common nucleus of operative fact." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The common nucleus of operative fact requirement is satisfied by a "loose factual connection between the claims." *McCoy*, 760 F.3d at 683 (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299

7

(7th Cir.1995)). The breach of contract claim against Mega, Pavilion, and Fishkin and the federal securities fraud claim against Fishkin, Field, and Renko derive from a common nucleus of operative fact—namely, the indebtedness to Frankfurt created by the promissory notes. If the complaint properly alleges a violation of the federal securities statute, then the state-law claims (Counts II and III) fall within supplemental jurisdiction. Conversely, as noted in the order on the previous motion to dismiss, if Count I fails to state a claim, the state-law claims will be dismissed for lack of subject matter jurisdiction. [52] at 3.

Thus, while the only claim against the moving defendants is Count III, and Count I is alleged against three defendants who have not yet appeared, it still makes sense to address Count I here, because it is the only claim that would give rise to subject matter jurisdiction.[4]

### B. Count I

Count I of the complaint refers to Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, and section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77/(a)(2).[5] Both Rule 10b-5 and section 12(a)(2) allow the buyer of a security to seek damages from the seller for making material misrepresentations in connection with the sale. 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77/(a)(2).

---

[4] Count II, another claim against the three individual defendants who have not yet appeared, is a state-law claim and is not relevant to this motion.

[5] Count I also refers to section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). But that section does not create a private right of action. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989).

8

### 1. *The Promissory Notes*

Defendants argue that the promissory notes at issue were not "securities" within the meaning of Rule 10b-5 and the Securities Act. They argue instead that the notes were ordinary commercial loans. Notes that were issued in a commercial or consumer context are not covered by federal securities law. *See Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). To determine whether a note is a security, the Supreme Court established a "family resemblance" test. *Id.* at 67. Under that test, a note is presumed to be a security, but defendants may rebut that presumption by showing that the note "bears a strong resemblance" to one of the following types of instrument that are not considered securities: notes delivered in consumer financing, notes secured by a mortgage on a home, short-term notes secured by a lien on a small business or some of its assets, notes evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, notes that formalize an open-account debt incurred in the ordinary course of business, and notes evidencing loans by commercial banks for current operations. *Id.* at 65. If defendants can show sufficient similarity between these instruments and Frankfurt's promissory notes, then the notes are commercial in nature and not securities (which include only those notes that were issued in an investment context). *Id.* at 67.

The Supreme Court identified four factors to be used in measuring the notes' resemblance to the categories listed above and their nature as investments: (1) the motivations prompting a reasonable buyer and seller to enter into the transaction;

9

(2) whether there is common trading for speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether alternative measures already reduce the risk of the instrument and render the protection afforded by federal securities law unnecessary. *Reves*, 494 U.S. at 66–67.

Based solely on the allegations of the second amended complaint, the promissory notes sold to Frankfurt are not the kinds of non-securities instruments listed in *Reves*, and applying the family resemblance test, they do not bear a strong resemblance to the listed instruments.[6] That means the complaint adequately alleges that they are securities within the meaning of federal securities law. The first factor examines the motivations of reasonable parties in entering into the transaction. "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Reves*, 494 U.S. at 66. Here, the seller's explicit purpose in selling the promissory notes was to finance "various projects," and Frankfurt was invited to an investor presentation at the site of one such project, the Pavilion Restaurant & Petergof Banquet Hall. Frankfurt, in turn, was interested in receiving profits in the form of interest on the loan. This factor suggests the notes are securities.

The second factor involves the plan of distribution of the instrument to determine whether there is common trading for speculation. *Reves*, 494 U.S. at 66.

---

[6] There is no indication from the complaint that the promissory notes represent a new category of instrument that must be added to the *Reves* list. *See Reves*, 494 U.S. at 67.

If the notes were "offered and sold to a broad segment of the public," then they are likely securities. *Id*. at 68. The complaint's description of the sale of the promissory notes is more akin to a transaction between private parties rather than a public offering, and there is scant evidence of the potential for common trading of the notes. But the complaint does allege that Frankfurt attended an investor presentation, and it is reasonable to infer that Frankfurt was not the only investor in attendance. Fishkin also told Frankfurt about Russian investors—although it is not clear that these Russian investors were offered the same notes as Frankfurt. Nevertheless, the complaint adequately suggests the existence of a market, and this factor weighs in favor of characterizing the notes as securities.

The third factor looks to the reasonable perceptions of the investing public, and whether others would consider the notes investments. *Reves*, 494 U.S. at 66. Frankfurt apparently considered them so, but there is no indication of who the other note-holders are, and how defendants advertised the notes to others, so this factor is neutral in the analysis.

The last factor examines the value of the application of federal securities law to the instrument in terms of risk reduction. *Reves*, 494 U.S. at 66. Given the absence of collateral or any other federal regulatory scheme that would afford protection in this context, this factor weighs in favor of the notes being securities. *See id*. at 69 (including as adequate risk-reducing factors collateral, insurance provided by the Federal Deposit Insurance Corporation, and regulation under the Employee Retirement Income Security Act).

The moving defendants apply the pre-*Reves* "commercial/investment test," and argue that the notes are not securities because they have a one-year term, fixed amount, and a fixed interest rate. But even under the commercial/investment test, these attributes are of little significance. *See Hunssinger v. Rockford Business Credits, Inc.*, 745 F.2d 484 (7th Cir. 1984) (determining that a note was a security even though it stated a fixed amount, a one-year term, and a fixed interest rate). Defendants also argue that the notes are commercial loans because Frankfurt received only interest payments and had no expectation of profits. But that argument, too, has no basis in law. The fact that a note generates interest does not exclude it from the meaning of "security," and interest payments constitute profits. *See Reves*, 494 U.S. at 68 ("We emphasize that by 'profit' in the context of notes, we mean 'a valuable return on an investment,' which undoubtedly includes interest.").

Defendants fail to rebut the presumption that the notes are securities, and the four *Reves* factors support a finding that the promissory notes are securities within the meaning of federal securities law. This analysis might change with further factual development, but as a matter of notice pleading, the complaint adequately alleges that the notes fall within the scope of Section 12(a)(2) and Rule 10b-5.

    2.    *Rule 10b-5*

To state a claim under Rule 10b-5, a plaintiff must allege that (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff

justifiably relied (6) and that the false statement proximately caused the plaintiff's damages. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). "[T]he scienter requirement is satisfied by a showing of reckless conduct 'defined as a highly unreasonable omission, . . . , which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946 (7th Cir. 1989) (quoting *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).

Defendants argue that failing to disclose that the businesses had taken out a $26 million loan and Fishkin's telling Frankfurt that the businesses were in good financial condition do not amount to a misrepresentation. They claim that Fishkin's statement that the businesses were in good financial condition was an opinion which does not constitute a false statement of fact, and that Fishkin did eventually inform Frankfurt of their poor financial condition in January 2009. They further argue that the complaint fails to properly plead the scienter requirement. And they claim that the complaint does not allege that there was a connection between Fishkin's statements and the sale of the notes.

Defendants' arguments are not persuasive. Rule 10b-5 requires disclosure when necessary "to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Telling Frankfurt that the businesses were in good financial condition, but failing to disclose that they were in danger of defaulting on a large loan and on the verge of

13

bankruptcy does indeed amount to an omission of material fact that could constitute a violation of Rule 10b-5, and any disclosure after the fact does not undo the violation. Further, Fishkin's omission was sufficiently unreasonable and misleading (given the vast, objective difference between "good financial condition" and "bankrupt") such that the scienter element has been pled. Finally, the connection between Fishkin's and Frankfurt's discussions of the financial health of the businesses and the sales of the promissory notes can be reasonably inferred from the complaint. Thus, the complaint states a Rule 10b-5 claim.

### 3. *The Statute of Limitations and Repose*

Federal securities fraud claims must be brought within two years of the discovery of the facts constituting the violation, and no later than five years after the violation. 28 U.S.C. § 1658(b). A cause of action accrues, and the two-year limitations period begins to run, "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010). But § 1658 also includes "an unqualified bar" on actions instituted five years after the violation, "giving defendants total repose after five years." *Id*. at 650. Defendants do not raise § 1658 in their motion to dismiss, and affirmative defenses ordinarily should not be resolved on a 12(b)(6) motion. Frankfurt should, however, consider whether his federal claim can proceed. As mentioned above, if there is no viable federal claim, the state-law claims belong in state court.

## C. Count III

To state a claim for breach of contract under Illinois law, a plaintiff must allege the following elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

Defendants state that Frankfurt fails to plead that there exists any contract between him and Mega or Pavilion. But that is not so. Read liberally, the second amended complaint alleges that in March 2010, Fishkin entered into a verbal agreement on behalf of all of the defendants, including Mega and Pavilion. And as an alleged owner of those entities, Fishkin had authority to bind them to a contract. The second amended complaint adequately alleges each of the remaining elements of a breach of contract claim. Under the verbal agreement, the defendants promised to make $1,000 monthly payments to Frankfurt from April 2010 through December 2011, and then pay the remainder of the promissory note in early 2012. In return, Frankfurt promised to not file a claim based on a breach of the 2008 promissory note. Frankfurt performed his obligations by refraining from filing suit, and defendants breached by failing to make the monthly payments. The complaint alleges that as a result, Frankfurt was injured in the amount of his outstanding balance.

The second amended complaint does provide the moving defendants with enough information to give them notice of the breach of contract claim. The motion to dismiss with respect to this claim is therefore denied.

## IV. Conclusion

The motion to dismiss [62] is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/7/16